```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA
                     CIVIL NO. 22-988(DSD/JFD)
```

William Dumont White,

        Plaintiff,

v.                                                        **ORDER**

Jesse Pugh, Warden, Rush City
Correctional Facility, Minnesota,

        Defendant.

This matter is before the court upon the parties' objections to the report and recommendation of United States Magistrate Judge John F. Docherty dated June 27, 2023 (R&R). Based on a review of the file, record, and proceedings herein, and for the following reasons, the objections are overruled.

**BACKGROUND**[1]

**I.   The Trial**

In 2017, a Stearns County jury found petitioner William Dumont White guilty of possession of a firearm by a person convicted of a crime of violence, in violation of Minn. Stat. § 624.713, subdiv. 1(2). The court sentenced him to 180 months' imprisonment. He is currently housed at the Rush City Correctional Facility under warden

---

[1] The facts relevant to this matter are undisputed and thoroughly set forth in the R&R. The court thus incorporates the R&R by reference and will recite only the facts required to provide context for the instant objections.

Jesse Pugh, the respondent in this matter.

In September 2107, the Saint Cloud police arrested White for disorderly conduct and a noise violation. Just before his arrest, White was the front passenger in a vehicle owned and driven by his friend, Jill Vierzba. After his arrest, officers searched Vierzba's vehicle on noting the smell of marijuana coming from the car. Vierzba consented to the search, which yielded a partially loaded, stolen, Glock, semi-automatic pistol with a partially scratched-off serial number. The gun was found in the glovebox, which was directly in front of where White had been sitting. Vierzba denied owning the gun or knowing that it was in the glovebox.[2]

White was nevertheless charged with unlawful possession of a firearm. At the trial, Vierzba testified that she was unaware that the gun was in the glovebox and that it had not been in the glovebox when she last opened it - the day before or that morning. She also testified that only she and her daughter had access to the car. Vierzba further testified that she did not see White with a gun when he got into her car and that she did not see or hear White put the gun in the glovebox while they were in the car together.

The prosecutor asked Vierzba if she was prohibited from possessing a firearm and she responded that she was not. She also

---

[2] Authorities were not able to conclusively identify fingerprints found on the gun.

denied being on probation. It is undisputed, however, that the prosecutor knew that Vierzba had a prior conviction for terroristic threats, which is a crime of violence under Minnesota law, and which prohibited her from possessing a firearm.[3] It is also undisputed that she was on probation for driving while intoxicated and theft both at the time of the offense and when she testified at White's trial, and that the prosecutor knew that fact but did nothing to correct her testimony. In post-conviction proceedings, the prosecutor acknowledged that if Vierzba's terroristic threats conviction resulted in her having a lifetime ban on firearm possession, then she too could have been charged with unlawful possession of a firearm. In other words, Vierzba had incentive to be untruthful on the stand.

The problem is that the prosecution never disclosed Vierzba's criminal history to White or his counsel. Indeed, to counter the defense's argument that the gun could have been Vierzba's, the prosecutor noted in closing argument that Vierzba was not prohibited from possessing a firearm – no doubt to negate any perceived incentive

---

[3] In 1999, Vierzba was convicted of making terroristic threats, a felony, and sentenced to a stay of imposition. In 2002, she was discharged from probation, and informed that she was prohibited from possessing a firearm for ten years from that date. In 2003, the charging statute was amended to "increase[]the ban from ten years to a lifetime." State v. Ryks, No. A08-126, 2009 WL 1515516, at *1 (Minn. Ct. App. June 2, 2009) (citing Minn. Stat. § 624.713).

for her to lie.

## II. Post-Conviction Proceedings

White appealed his conviction and sentence to the Minnesota Court of Appeals, raising numerous arguments. As he was not yet aware of Vierzba's convictions, however, he did not argue that the prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963) or Giglio v. United States, 405 U.S. 150 (1972), by failing to disclose that evidence. The court of appeals affirmed, concluding, among other things, that there was sufficient evidence for the jury to conclude that White possessed the firearm instead of Vierzba or someone else. See State v. White, No. A19-0307, 2020 WL 132523 (Minn. Ct. App. Jan. 13, 2020). The court also rejected White's argument that Vierzba's testimony was self-interested because she wanted to avoid a conviction relating to the firearm. Id. at *2. In doing so, the court specifically noted that because Vierzba testified that she was not prohibited from possessing a firearm, she could not be considered an accomplice to the crime. Id. at *3. White file a petition for review with the Minnesota Supreme Court, which was denied.

In February 2020, while in prison, White learned for the first time about Vierzba's previous convictions – including terroristic threats, theft, and DWI. He filed a petition for post-conviction relief in Stearns County, arguing that this new evidence demonstrated

4

Brady and Giglio violations by the prosecutor and ineffective assistance of counsel by his trial and appellate counsel. The court held an evidentiary hearing which revealed the following: (1) the prosecutor did not know whether Vierzba's criminal history was disclosed to the defense before trial because he was new to the case; (2) the prosecutor was aware of Vierzba's terroristic threats conviction at the time of trial and probably also knew that she was on probation for other offenses; and (3) the prosecutor did not understand that the lifetime ban on firearms possession applied to Vierzba because he did not believe that the statutory amendment was retroactive;[4] (4) the prosecutor did not believe that Vierzba's conviction could be used for impeachment given that it occurred so many years before. Although White's trial counsel testified that

---

[4] There appears to be no serious dispute that the statute was retroactive in nature and applied to Vierzba. See Minn. Stat. § 624.713(13) (providing that "the lifetime prohibition on possessing . . . firearms . . . for persons convicted or adjudicated delinquent of a crime of violence in clause (2) applies only to offenders who are discharged from sentence or court supervision for a crime of violence on or after August 1, 1993." Minn. Stat. § 624.713(13). Vierzba was charged in 1999 with the crime and discharged from her sentence in 2002 – well after the 1993 cut-off date. Further, the fact that Vierzba was granted a stay of imposition, which ultimately downgraded her conviction to a misdemeanor, does not affect the applicable lifetime ban. See State v. Moon, 463 N.W.2d 517, 521 (Minn. 1990) (holding that for purposes of a firearm ban, the crime of conviction controls "rather than the disposition subsequently imposed by the trial judge").

she may not have used the conviction against Vierzba at trial because Vierzba's testimony also aided White, White testified that he would not have agreed with counsel's unwillingness to do so and would have hired a different lawyer to represent him.

Despite concluding that the prosecution violated Brady by failing to disclose Vierzba's criminal history, the court ruled against White.  The court noted that the undisclosed facts were not necessarily favorable to White and that White failed to establish that their absence from the trial prejudiced the outcome.  The court pointed specifically to defense counsel's strategy to maintain Vierzba as a favorable witness, which meant that they would not have raised her previous convictions even if they had been aware of them.

White unsuccessfully appealed that decision to the Minnesota Court of Appeals.  See White v. State, No. A21-0423, 2021 WL 5441783 (Minn. Ct. App. Nov. 22, 2021).  The court found that there was sufficient evidence for the jury to conclude that White possessed the gun and that evidence regarding Vierzba's conviction would not have undermined that evidence.  See id.  The Minnesota Supreme Court again denied White's petition for review.

### III. The Petition

On April 19, 2022, White filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254.  White raises the following grounds for relief under the Fifth and Sixth Amendments: (1) the

prosecutor failed to disclose Vierzba's terroristic threats conviction, which made her ineligible to possess a firearm (2) the prosecutor failed to disclose that Vierzba was on probation at the time of the offense and at trial; (3) the prosecutor knowingly elicited false testimony from Vierzba; and (4) his trial and appellate counsel were ineffective in failing to discover and use Vierzba's criminal history.  White also contends that he was subject to an illegal search and seizure at the time of his arrest for disorderly conduct and a noise violation, because it deprived him of standing to object to the search of Vierzba's vehicle; there was a lack of probable cause to hold him for trial; and the state courts unreasonably concluded that Vierzba's criminal history was irrelevant to the case.

**IV.  The R&R**

On June 27, 2023, the magistrate judge issued the R&R, concluding that the Minnesota state courts unreasonably applied federal law by rejecting White's claims under <u>Brady</u> and <u>Giglio</u>. The magistrate judge recommends granting the first claim in the petition, issuing a writ of habeas corpus, and ordering White's release from custody unless the State of Minnesota moves to retry him within 60 days of this court's judgment.  The magistrate judge further recommends denying the other claims set forth in the petition.

7

Pugh objects to the recommendation that the first claim be granted and White objects to the recommendation that the remaining claims be denied.

## DISCUSSION

A federal court may grant habeas relief under § 2254 if it determines that the underlying state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). "[A] state court decision is contrary to clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." Brende v. Young, 907 F.3d 1080, 1085 (8th Cir. 2018) (internal citations omitted). This standard is difficult to meet, and a habeas petitioner must "show that the state court's ruling on the claim ... presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. (internal citations omitted). The unreasonable application of those holdings must be objectively

unreasonable, not merely wrong; even clear error will not suffice. White v. Woodall, 572 U.S. 415, 419 (2014).

The court reviews de novo any portion of the R&R to which specific objections are made. 28 U.S.C. § 636 (b)(1)(C); D. Minn. LR 72.2(b). After a careful review, the court finds that the R&R is well reasoned and correct.

**I.   Pugh's Objection**

In the petition, White contends that his Fifth Amendment due process rights were violated because the prosecution failed to disclose Vierzba's criminal history. White argues that this failure violated Brady, Giglio, and Minnesota Rule of Criminal Procedure 9.01. The R&R focuses on Brady, as will this order.[5]

Under Brady, the prosecution violates the due process clause "if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment," even if it does so in good faith. Turner v. United States, 582 U.S. 313, 315 (2017) (quotation and citation omitted); United States v. Pendleton, 832 F.3d 934, 940 (8th Cir. 2016). In order to establish a Brady violation, the petitioner must establish that the evidence at issue is "favorable to the accused, either because it is exculpatory, or

---

[5] Under Giglio, evidence tending to impeach the credibility of prosecution witnesses may be subject to the Brady disclosure requirements. See Pederson v. Fabian, 491 F.3d 816, 827 (8th Cir.

because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 282 (1999). Pugh has acknowledged that the first two elements are met here, so the R&R focuses on the issue of prejudice.

As set forth in the R&R, "[p]rejudice results if the suppressed evidence is material." Kennell v. Dormire, 873 F.3d 637, 639 (8th Cir. 2017). In other words, there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" is one "sufficient to undermine confidence in the outcome" of the trial. Id.

After a thorough review of the record, the magistrate judge determined that the evidence of Vierzba's criminal history was material, contrary to the state court decisions. In sum, the magistrate judge found that the "information about Ms. Vierzba's criminal record and resultant lifetime ban on firearms possession should have been presented to the jury. If it had been, there was a reasonable probability that 'the result of the proceeding would have been different.'" ECF No. 17, at 31. The magistrate judge

---

2007). Minn. R. Crim. P. 9.01 likewise requires prosecutors to disclose exculpatory information to defense counsel.

also found that the prosecution's failure to disclose that Vierzba was on probation at the time of the offense and the trial to be a material omission in violation of Brady.  In doing so, the magistrate judge determined that the Minnesota Court of Appeals unreasonably determined to the contrary.  See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (holding that in assessing a state court's decision, the court considers not whether it was correct, but rather whether it was "unreasonable," which is a "doubly deferential review").

Pugh objects, arguing that the state appellate court determination was not based on an unreasonable application of clearly established federal law.  The Minnesota Court of Appeals held that although Vierzba's testimony was inaccurate about her inability to possess and firearm and her probationary status, that information was not material because there were sufficient facts in the record to establish that White hid the gun in the glovebox without Vierzba's knowledge or consent.  White, 2021 WL 5441783, at *5.

Even if true, the undisclosed information about Vierzba's criminal history undoubtedly changed the complexion of the trial, and its absence from the trial is sufficient to undermine confidence in its outcome.  At trial, defense counsel suggested that Vierzba or someone else may have put gun in the glovebox instead of White.  Although she claims that she may not have used the information against Vierzba had she known it, the circumstances would have counseled

11

in favor of the opposite approach. Indeed, White testified that he would have secured new counsel, if needed, to present a full defense, including the information about Vierzba's criminal history.

With the undisclosed information, White's counsel could have impeached Vierzba on several key points. It would have called into question her motivation to deny that the gun was hers, belied her untruthful statement that she was able to legally possess a firearm, and proven false her denial of being on probation. Given that there are no direct facts other than White's placement in the car supporting the conviction,[6] the ability to impeach Vierzba is not only material, but crucial to White's defense. Therefore, for this reason and for all of the reasons set forth in the R&R, the court overrules Pugh's objection and concludes that the first ground for relief in White's petition must be granted.

## II. White's Objections

White objects to the R&R's recommendation that the remaining grounds of the petition be denied.

---

[6] The court of appeals noted Vierzba's apparent surprise that a gun was in her glovebox and stated that this fact supported White's conviction. White, 2021 WL 5441783, at 4. But her reaction could have been disingenuous or due to concern that she might be charged with unlawful possession, as was White. Her reaction was certainly not concrete evidence that it was White's gun or that he placed it there. With all relevant information before it, and with cross examination, a jury will be able to consider the nature and reason for Vierzba's reaction to seeing the gun. Her perceived reaction

12

A.   **Ineffective Assistance of Counsel**

White argues that his counsel was ineffective in the following ways: (1) in failing to discover and use Vierzba's criminal history; and (2) in failing to argue that the police unlawfully expanded the scope and duration of his arrest.

To show that he received ineffective assistance of counsel, White must meet both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984). See United States v. Williams, 562 F.3d 938, 941 (8th Cir. 2009). First, he must show that his counsel's performance was so deficient that it was objectively unreasonable. Strickland, 466 U.S. at 687-88. Because "[t]here are countless ways to provide effective assistance in any given case" and different attorneys "would not defend a particular client in the same way," the court reviews the performance of defense counsel with significant deference. Id. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Second, White must demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

---

cannot stand alone as evidence of White's guilt without being tested.

### 1. **Vierzba's Criminal History**

There is no dispute that White exhausted this aspect of his claim by raising it, albeit unsuccessfully, in the state courts. The state district court determined that White's trial counsel was not ineffective for failing to uncover and use Vierzba's criminal history because she asked for that information in discovery, reviewed the evidence obtained from the government, hired a private investigator to check in to Vierzba's jail phone calls. Further, the state court noted that White's counsel made the tactical decision to keep Vierzba as a favorable witness. The state court ultimately determined that trial counsel's representation was objectively reasonable in this regard and, even if not, the outcome of the trial would not have been different. The Minnesota Court of Appeals agreed, upholding trial counsel's tactical decision to preserve Vierzba's credibility as objectively reasonable.

As noted, on review, this court considers whether the state court decision was "unreasonable." Knowles, 556 U.S. at 123. In the R&R, the magistrate judge determined the state court determinations as to trial counsel's decisions were reasonable. White objects to this finding, arguing that his trial counsel could have discovered Vierzba's criminal history had she tried. In White's view, the evidence of Vierzba's criminal history would likely have changed the outcome of the trial. But this argument ignores

14

that trial counsel testified that she felt it was in White's best interest to keep Vierzba's credibility intact given that she testified in White's favor.  In other words, she made a tactical decision to maintain Vierzba as a favorable witness and would have done so even if she had known about Vierzba's criminal history.  The state courts found that decision to be objectively reasonable under the circumstances and the court, in turn, finds their decisions to be reasonable.  This aspect of White's objection is denied.[7]

### 2. Scope of Duration of White's Arrest

White argues that his trial and appellate counsel were also ineffective for failing to argue that officers violated Minnesota Rule of Criminal Procedure 6.01 by unlawfully expanding the scope and duration of his arrest.  White raised this issue in the state district court and court of appeals, but did not include the argument in his petition for review to the supreme court.  Nor did he raise the issue in his petition before this court.

In the R&R, the magistrate judge determined that White procedurally defaulted on the claim, failed to establish cause for the default, and did not show that he suffered actual prejudice or that a miscarriage of justice would occur if the issue is not

---

[7] The court likewise finds that White has no claim against his appellate counsel as to this issue because appellate counsel is bound by the existing record in the case and is not obligated to uncover additional evidence.

considered by this court. McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). White objects to this determination, arguing that he did raise the issue in his petition for review. But the court's review of that petition belies his argument. The issue was not raised and the R&R properly concludes that it was therefore procedurally defaulted. As a result, the objection is overruled without a discussion on the merits.

### B. Search and Seizure

White contends that his Fourth Amendment rights were violated because he was not allowed to challenge the search of Vierzba's vehicle because he was already under arrest for disorderly conduct and a noise violation. The R&R concluded that White was precluded from raising this issue on federal habeas review because he was given a full and fair opportunity to address the issue in the state courts. See Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994) (holding that a habeas petitioner's Fourth Amendment claim is "unreviewable by a federal habeas court, unless the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system").

In his objection, White argues that he did not have a full and fair opportunity to bring the issue before the state courts because his counsel was ineffective. But the question is not whether the

issue was raised in the best possible way by counsel. Instead, the court considers whether there are procedures in place to allow the issue to be raised and heard. See id. There is no dispute that such procedures are and were in place and available in the state courts. As such, this objection is also overruled.[8]

### C.  Probable Cause to Hold for Trial

White argues, for the first time in his reply brief underlying the R&R, that had the state court known about Vierzba's criminal history, the case would have been dismissed for lack of probable cause. He suggests that this claim is part of his claim for ineffective assistance of counsel, although that is not clear from the record. In any event, the R&R concluded that the issue was not fairly raised and lacks a legal basis. The court agrees. The court also notes that even though evidence regarding Vierzba's criminal history would have been highly relevant in the trial, as will be discussed above, it would not have definitively established that there was no probable cause to prosecute White. The evidence relates to Vierzba's credibility rather that whether the facts could support a finding that White illegally possessed the gun.

### D.  Determination of Facts

White lastly objects to the R&R's determination that the state

---

[8] To the extent White persists in his claim that he was illegally arrested, the same analysis and conclusion applies.

courts did not make unreasonable determinations of fact relating to Vierzba's criminal history. The magistrate judge concluded that the state courts did not make the factual determinations as stated by White and that White was not prejudiced by the state courts' factual determinations in any event. The court finds the R&R to be conclusive and correct on this issue and White's objection is unpersuasive. The objection is overruled.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The R&R [ECF No. 17] is adopted in its entirety;

2. The objections [ECF Nos. 20, 21] are overruled;

3. The petition [ECF No. 1] is granted; and

4. White shall be released from custody unless the State of Minnesota moves to retry him within 60 days of the judgment in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 12, 2023

                                           s/David S. Doty
                                           David S. Doty, Judge
                                           United States District Court